# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PLAYER PIANO PARTS, INC., *Plaintiff*, vs. BRENT BURDICK, *Defendant*. | Case No. 09-1178-EFM |

## MEMORANDUM AND ORDER

Plaintiff Player Piano Parts, Inc. brings a cybersquatting claim against Defendant Brent Burdick with minimal allegations. Before the Court is Defendant's Motion to Dismiss (Doc.9). For the following reasons, the Court grants the motion.

**I. Factual and Procedural Background**

The following facts are taken from Plaintiffs' Amended Complaint.[1] For the purposes of this motion, the Court assumes the truth of these facts. Player Piano Company, Inc. is a Kansas corporation that was formed in 1971. It was owned and operated by Durrell Armstrong. Under Armstrong's leadership, Player Piano Company, Inc. became the world's largest supplier of material for rebuilding and repairing antique player pianos, organs, and coin-operated musical instruments.

---

[1] Plaintiff filed an Amended Complaint while this motion to dismiss was being briefed, and the Court will rely on the allegations in the Amended Complaint.

In 2001, Player Piano Company, Inc. created a domain name and website at which customers could learn about player piano repair and maintenance and order supplies, parts, materials and kits to repair their player piano. When the website was created, Player Piano Company, Inc. had Defendant Brent Burdick, a relative of a former employee of Player Piano Company, assist it in creating and maintaining the website. The domain name and website were for the benefit of Player Piano Company.

In December, 2008, Armstrong died. On March 20, 2009, Plaintiff Player Piano Parts, Inc. bought the assets of Player Piano Company, Inc. from Armstrong's Estate. The assets included Player Piano Company, Inc.'s internet domain name and website. Since the purchase, Plaintiff has been unable to control, operate or use for its own benefit the internet domain name and website because the internet domain name is registered to Defendant. Defendant's representation to the registrar about his ownership of the domain name was false. Defendant is not the lawful owner of the domain name and website and despite Plaintiff's demand for surrender and transfer of the same, Defendant has failed and refused.

Plaintiff states that Defendant's continued registration and use of the domain name is a violation of 15 U.S.C. § 1125(d) in that the domain name is identical to and/or confusingly similar to the Player Piano Company, Inc. mark, which is now owned by Plaintiff. In addition, Plaintiff asserts that Defendant has a bad faith intent to profit from using the domain name and website as Defendant intends to divert customers from Plaintiff to himself or his relative who assembles certain parts for player pianos. All orders placed on the website are received by Defendant, not Plaintiff.

Plaintiff originally filed its complaint in state court, and Defendant removed it to this Court. Defendant then filed a motion to dismiss on the basis that Plaintiff failed to state a claim under

Federal Rules of Civil Procedure 12(b)(6). Plaintiff filed its response to Defendant's motion and an Amended Complaint on the same day. Plaintiff's response to Defendant's motion to dismiss states that its Amended Complaint corrects the alleged deficiencies making Defendant's motion moot, and Plaintiff argues that it set forth adequate facts in the Amended Complaint to state a claim under 15 U.S.C. § 1125(d). Defendant filed his reply arguing that Plaintiff's Amended Complaint fails to address the pleading deficiencies and that the arguments in its pending motion to dismiss are applicable to the Amended Complaint, as well.

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[2] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[3] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[4]

In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[5] All well pleaded facts in the complaint are assumed to be true and

---

[2]*Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twonbly*, 550 U.S. 544, 570 (2007)).

[3]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[5]*Iqbal*, 129 S.Ct. at 1950.

are viewed in the light most favorable to the plaintiff.[6] Allegations that merely state legal conclusions, however, need not be accepted as true.[7]

**III. Analysis**

Plaintiff's Amended Complaint alleges one claim under 15 U.S.C. § 1125(d) which is part of the Anti-Cybersquatting Protection Act ("ACPA"). 15 U.S.C. § 1125(d)(1)(A) provides:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> (I) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
>
> (ii) registers, traffics in, or uses a domain name that--
>
> (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
>
> (II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
>
> (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

This statute "provides for liability if a person registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive mark, with a bad faith intent to profit from that mark."[8]

To prevail on a cybersquatting claim, Plaintiff must show (1) that its trademark was distinctive or famous; (2) that Defendant's domain name is identical or confusingly similar to Plaintiff's trademark; and (3) that Defendant used or registered the domain names in bad faith with

---

[6]*See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[7]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[8]*Ultra Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1057 (10th Cir. 2008) (citing 15 U.S.C. § 1125(d)(1)(A)).

an intent to profit from it.[9] Plaintiff, therefore, must allege facts in support of these three elements to demonstrate that it has a plausible claim.[10]

Plaintiff has failed to state a claim against Defendant as it fails to allege the first element of a cybersquatting claim. Plaintiff has failed to allege that it holds a distinctive or famous mark. In fact, it is unclear that Plaintiff has even alleged that it owns a trademark. The only allegation that references a "mark" is paragraph 15. This paragraph states "Defendant's continued registration and use of the domain name is a violation of 15 U.S.C. § 1125(d) in that the domain name is identical to and/or confusingly similar to the Player Piano Company, Inc. mark, which is now owned by Plaintiff." Although this paragraph states that the Player Piano Company, Inc. mark is now owned by Plaintiff, Plaintiff does not previously allege that this is a mark. Plaintiff's previous allegations state that Player Piano Company, Inc. is a Kansas corporation formed in 1971 by Armstrong, and in 2001, Player Piano Company, Inc. created a domain name and website. On March 20, 2009, Armstrong's Estate sold to Plaintiff the assets of Player Piano Company, Inc., including its internet domain name and website.

A domain name is not necessarily a trademark. "A domain name is a unique string of characters or numbers that typically is used to designate and permit access to an Internet website."[11] "A trademark is a distinctive mark, symbol, or emblem used by a producer or manufacturer to identify and distinguish his goods from those of others."[12] "Cybersquatting involves the registration

---

[9]*Id.*; *see also Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1032, 1064 (D. Kan. 2006) (citing *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 367 (D.N.J. 2004)).

[10]*See Cleary Bldg. Corp. v. David A. Dame, Inc.*, - - - F. Supp. 2d - - -, 2009 WL 4506414, at *4 (D. Colo. Dec. 1, 2009).

[11]*Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 295 (2d Cir. 2002) (citation omitted).

[12]*Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 939 (10th Cir. 1983) (citation omitted).

as domain names of well-known trademarks by non-trademark holders who then try to sell the names back to the trademark owners."[13] Plaintiff has not specifically alleged that the domain name, Player Piano Company, Inc. is a trademark. As such, it is unclear that Plaintiff can meet the first element of a cybersquatting claim because it is unclear that Player Piano Company, Inc. is a mark.[14]

In addition, as Defendant points out, Plaintiff states in the Amended Complaint that the website and domain name were created in 2001 and that after Plaintiff purchased the assets from the estate in 2009, Plaintiff has been unable to use the domain name because the internet domain name is registered to Defendant. If the domain name is registered to Defendant as the Amended Complaint states, it appears that as a matter of law, Armstrong's estate could not have transferred the domain name registration owned by Defendant. As such, it does not appear that Plaintiff legally owns the mark, if it can be considered a mark.[15]

Finally, even assuming that Plaintiff owns a mark and that mark is Player Piano Company, Inc., Plaintiff fails to adequately allege the first element of a cybersquatting claim as there are no allegations that this mark is distinctive. In fact, the word "distinctive" is never used in the Amended Complaint. As stated above, it is unclear whether Plaintiff is alleging that Player Piano Company,

---

[13] *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 493 (2d Cir. 2000) (citation omitted).

[14] The Tenth Circuit has language that indicates the first element of a cybersquatting claim requires that the mark "was distinctive at the time of registration of the domain name." *Utah Lighthouse Ministry*, 527 F.3d at 1057. Plaintiff again fails to adequately allege this element as the Amended Complaint does not allege that the mark was distinctive in 2001, at the time of registration of the domain name As stated above, there is virtually nothing in the Amended Complaint regarding a trademark, and it is a stretch to find that Plaintiff adequately alleges that Player Piano Company, Inc. is a trademark.

[15] The Southern District of Florida recently stated that "[a]s a threshold matter, standing under this statute [15 U.S.C. §1125(d)(1)(A)] is limited to registrants of trademarks, as the statute explicitly authorizes a cause of action 'by the owner of a mark.'" *Trump Plaza of the Palm Beaches Condominium Ass'n, Inc. v. Rosenthal*, 2009 WL 1812743, at *11 (S.D. Fla. June 24, 2009) (citing *America Online Latino v. America Online, Inc*., 250 F. Supp. 2d 351 (S.D.N.Y. 2003), *clarified* 2003 WL 1842874 (S.D.N.Y. 2002)). This court concluded that because it was undisputed that the plaintiff did not own the marks at issue, it did not have standing to assert a claim under the ACPA. *Id.* Here, if Plaintiff does not legally own the mark at issue, it would not have standing to bring the claim.

Inc. is a mark, and there certainly are no allegations stating that this mark is distinctive or famous in any fashion. While Plaintiff asserts that under Armstrong's leadership, Player Piano Company, Inc. became the world's largest supplier of materials for rebuilding player pianos, organs, and coin-operated musical instruments, there is simply nothing in the Amended Complaint about the "mark" Player Piano Company, Inc. being famous or distinctive. As such, Plaintiff fails to adequately state a cybersquatting claim under 15 U.S.C. § 1125(d) because it has not alleged an essential element.

**IT IS ACCORDINGLY ORDERED** this 19th day of January, 2010 that Defendant's Motion to Dismiss (Doc. 9) is hereby granted.

**IT IS SO ORDERED**.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE